IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH A. M., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 19-CV-544-JFJ ) |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Elizabeth A. M. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

2

decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.*  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*  A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

Plaintiff, then a 55-year-old female, protectively applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on November 30, 2016, alleging a disability onset date of September 1, 2015.  R. 17, 239-242, 243-249.  Plaintiff claimed she was unable to work due to conditions including epidural lipomatosis, post-traumatic stress disorder ("PTSD"), anxiety with panic attacks, and degenerative osteoarthritis.  R. 261.  Plaintiff's claims for benefits were denied initially on January 16, 2017, and on reconsideration on July 12, 2017.  R. 66-131.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on August 21, 2018.  R. 35-65.  The ALJ issued a decision on September 17, 2018, denying benefits and finding Plaintiff not disabled because she was able to perform her past relevant work as a paralegal, money counter, and assistant care giver.  As an alternate finding at step five, the ALJ found Plaintiff was also able to perform other jobs existing in the national economy.  R. 19-28.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-5; ECF No. 2.

The ALJ determined that Plaintiff met the insured requirements for Title II benefits through March 31, 2016. R. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2015.[1] R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, status post lumbar laminectomy and evacuation of epidural lipomatosis performed March 22, 2017. R. 20. The ALJ also found Plaintiff's medically determinable impairments of depression and anxiety were non-severe impairments. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 22. In assessing Plaintiff's mental impairments, the ALJ found that Plaintiff had no limitation in any of the four "paragraph B" criteria areas of understanding, remembering, or applying information; adapting or managing oneself; interacting with others; and concentrating, persisting, or maintaining pace. R. 20-22.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's mother's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of light work except as follows:

> Lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday with normal work breaks; stand and/or walk 6 hours in an 8-hour workday with normal work breaks; push/pull 20 pounds occasionally and 10 pounds frequently; frequently reach overhead bilaterally; and avoid hazards such as unprotected heights and moving machinery.

R. 22-23. At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a paralegal (light, skilled, SVP 7), money counter (light, semi-skilled, SVP 3), and an assistant care giver (light, semi-skilled, SVP 3), each as actually and generally performed. R. 27. Based on the testimony of a vocational expert ("VE"), the ALJ alternatively found at step five that

---

[1] The ALJ noted that Plaintiff acknowledged that she signed up for and received unemployment benefits, certifying that she was ready, willing, and able to work. *See* R. 20, 256.

Plaintiff could perform other unskilled light, and sedentary work, such as receptionist (semi-skilled, sedentary, SVP 4), general office clerk (semi-skilled, light, SVP 3), and data entry clerk (semi-skilled, sedentary, SVP 4). R. 27-28. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. R. 28. Accordingly, the ALJ concluded Plaintiff was not disabled.

### III. Issues

Plaintiff raises two points of error in her challenge to the denial of benefits: (1) the ALJ "improperly considered [Plaintiff's] mental impairments"; and (2) the ALJ failed to conduct a "full and proper credibility analysis as it relates to [Plaintiff's] mental impairments." ECF No. 14.

### IV. Analysis

#### A. ALJ Properly Considered Plaintiff's Mental Impairments

Plaintiff contends the ALJ erred at step two, because the she improperly found Plaintiff's mental impairments of anxiety and depression were non-severe (R. 20), and she improperly determined that that Plaintiff had no limitations in any of the four broad "paragraph B" areas of functioning (R. 20-22). Plaintiff contends these step-two errors led to further error at later steps of the analysis, because the ALJ did not consider her mental impairments beyond step two. *See* ECF No. 14 at 4. In support, Plaintiff points to her own statements and testimony supporting the severity of her PTSD, anxiety, and panic attacks. *See* R. 49, 51-53, 282.

Plaintiff's arguments are unpersuasive. As an initial matter, to the extent Plaintiff contends the ALJ committed reversible error at step two by failing to find her mental impairments "severe" at step two, this argument fails. Given the fact that the ALJ found Plaintiff to have severe impairments and addressed her medically determinable mental impairments, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two

5

is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

The Court further finds that the ALJ's conclusions regarding Plaintiff's mental impairments are supported by substantial evidence. The ALJ clearly considered Plaintiff's depression and anxiety at step two but found them to be non-severe. R. 20. In making this determination, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria, and found Plaintiff's medically determinable mental impairments caused no limitations in any of the functional areas. R. 20-22. In making this determination, she considered Plaintiff's own allegations in her function report (R. 275-282), Plaintiff's mother's December 2016 third-party function report (R. 291-298), and progress notes from mental health and medication management visits between April 2015 and March 2017 (R. 390, 343, 353, 732-733).

The ALJ found that the "totality of evidence" showed that Plaintiff "has mental health impairments which are well-controlled on medications." R. 21. She explained that Plaintiff reported to her mental health care provider in September 2016 that she was "a lot calmer and more relaxed about things" while taking Zoloft, Ambien, and Lorazepam. R. 22 (citing R. 353). The ALJ also noted that, upon presenting to her physician with increased irritability and agitation in March 2017, Plaintiff requested Abilify for augmentation. R. 21 (citing R. 732-733). Plaintiff's physician observed a generally normal mental status at that visit, apart from irritable mood and reactive affect. *See* R. 732-733. The ALJ further found, as part of this discussion, that Plaintiff should be able to perform the step-four and step-five jobs with the RFC she had assigned. R. 21. As part of the RFC discussion, the ALJ also noted that she relied on and gave "great weight" to

the opinions of the state agency psychologists that Plaintiff's mental impairments were not severe. R. 26 (citing 72-74, 84-86, 103-106, 122-125).

Plaintiff alleges the ALJ's discussion of her mental impairments was inadequate, primarily because the ALJ stated that Plaintiff "did not allege" any problems or specific issues in any of the four "paragraph B" functional areas. R. 20-21. Plaintiff argues that the ALJ's discussion is "simply false," because her function report and testimony strongly support problems with increasing PTSD (R. 282); problems with being in crowds of strangers (R. 49); anxiety issues that require medication (R. 51); "anxiety attacks" that make her incapable of doing anything for days (R. 52), and (4) panic attacks that cause her to shake, sweat, and feel as though things are moving "very fast" around her (R. 52). Plaintiff testified that her panic attacks have unknown triggers, occur once or twice per week, and last a couple of hours if she takes Lorazepam. R. 52-53. When she has a panic attack, Plaintiff testified she has to go to a close, safe place, work on breathing exercises, and perform self-meditation. R. 53.

The Court rejects Plaintiff's argument that the ALJ committed reversible error by noting that Plaintiff "did not allege" particular limitations in any of the four "paragraph B" areas. Plaintiff correctly points to allegations of anxiety, PTSD, difficulty around strangers, and panic attacks with unknown triggers (R. 49, 52-53, 282). Plaintiff's function report and her mother's third-party function report further allege difficulty with memory, completing tasks, and concentration. R. 280, 296. However, the Court finds that the ALJ's comments that she "did not allege" any particular issues in the four functional "paragraph B" areas (R. 20-21), while not entirely accurate, are too vague to constitute reversible error where the ALJ's mental findings are otherwise supported by substantial evidence. In each of the four "paragraph B" areas, the ALJ supported her findings with specific statements from Plaintiff's function report. R. 20-21 (citing R. 275-282).

7

The ALJ also supported her mental findings with reports and observations from Plaintiff's medical care providers and Plaintiff's mother. R. 21-22 (citing R. 291-298, 343, 353, 390, 732-733).

While the records Plaintiff cites support her complaints regarding her mental conditions, Plaintiff cites no records showing any objective findings supporting those allegations. The ALJ found that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 23. As explained below, the Court finds that the ALJ's consistency findings are supported by substantial evidence and legally sound. By contrast, at examinations throughout the record, Plaintiff's care providers repeatedly observed she was alert, oriented, attentive, pleasant, and cooperative, and she demonstrated generally normal mood and affect, appropriate grooming/hygiene, normal or primarily normal speech, good eye contact, normal behavior and thought process, logical responses, adequate memory, normal concentration, average fund of knowledge and intellectual functioning, and fair to good insight and judgment. *See* R. 353, 355, 357, 359, 387, 388, 393-394, 396-397, 454-455, 486, 498-500, 502, 520, 522, 524, 526, 528-529, 545, 556, 558, 561, 694, 697, 699, 701, 703, 705, 721, 723-727, 730.

Other records contradict the alleged severity of Plaintiff's mental health symptoms and support the ALJ's finding that mental health symptoms were well-controlled on medication. Notably, in November 2015, Plaintiff reported her panic attacks were intense but come "quarterly," and she reported "generally really good" mood and lessened daily anxiety feeling (R. 396); in June 2016, she reported "rare" panic attacks and denied excessive anxiety to her care provider (R. 387); in September 2016, she reported ability to concentrate well, no trouble with memory, and racing thoughts that were manageable on medication (R. 353); in September 2016, she reported keeping in touch with friends and family, meeting a new friend at the grocery store who had become her best friend, and having no trouble keeping up with personal hygiene (R. 403-404); in March 2017,

8

she reported her concentration had been good, and panic attacks had decreased in frequency and length due to medications, although her short-term memory had been "terrible" (R. 531-532); in March 2017, she reported she had strong family support, spent a lot of time with a friend with whom she had a "close bond," took responsibility for managing the emotions of her adult children "with grace," and could get along well with others but did not like large crowds (R. 534-535); in November 2017, she reported no current issues with interpersonal relationships or self-care/basic needs (R. 678-680); in November 2017, she reported her meds were "working great," and she rated her depression at 1/10, rated anxiety at 3/10, and reported good energy level (R. 720); in July 2018, she reported anxiety rated at 5/10, racing thoughts, "okay" energy level, "pretty good" motivation, "pretty good" concentration, "great" long-term memory, and "so-so" short-term memory, (R. 682-683). Less favorable notations in the record appear isolated and mild. *See* R. 526 (Plaintiff presented to care provider with depressed and anxious mood/affect, racing thoughts, and lack of concentration in March 2017), R. 726-727 (Plaintiff reported low mood, difficult sleep, low energy, and some panic attacks in April 2018, and care provider observed constricted affect and anxious mood but otherwise generally normal mental status).

While the ALJ did not note every one of Plaintiff's allegations regarding her mental impairments, the ALJ is not required to discuss every piece of evidence in the record. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). Moreover, the ALJ's discussion of Plaintiff's mental impairments at step two adequately addressed the relevant issues regarding mental limitations, and the ALJ's failure to address this information again in discussion of the RFC does not render the ALJ's discussion deficient. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (affirming ALJ's rejection of treating physician opinion where ALJ "set forth a summary of the relevant objective medical evidence earlier in his decision,"

9

and ALJ was "not required to continue to recite the same evidence again in rejecting [the] opinion"). The Court identifies no error.

### B. The ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues that the ALJ's consistency analysis was flawed. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

10

As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 23. She explained that:

> Evidence generally does not support the alleged loss of functioning. The claimant testified she is 5'5" and weighs 180 pounds. She was married and divorced. She has three adult aged children and no grandchildren. She lives in a mother-in-law apartment on the second floor with her mother and stepfather. She signed up for unemployment benefits and received them until March 2016. She has a driver's license and drives once a week; she drove herself to the hearing (42 minutes away). Her activities of daily living include watching television, playing games on her phone, preparing meals, and she can do laundry.
>
> Upon examination by her attorney showed [sic] she underwent surgery in March 2017. She reported incontinence; problems sitting, stand [sic] and walking; and trouble with legs. She stated she can stand 10 minutes, walk 15-20 minutes, and sit 20 minutes. Once a month her girlfriend takes her to the store. She has no idea how much she can lift, but noted not much. She stated she can carry a gallon of water, but not 2 gallons of water.

R. 23.

The ALJ further stated that Plaintiff's allegations of mental impairments were inconsistent with other evidence in the record. R. 20-21. The ALJ highlighted a third-party function report from Plaintiff's mother (R. 291-298), as well as Plaintiff's own function reports, which indicated she had no problems in her ability to perform light household chores, meal preparation, laundry, driving, getting along with others, attending church, reading, managing funds, paying attention, following instructions, and managing her own self-care (R. 275-282). R. 20-21.

The Court finds the ALJ's analysis was appropriate. Plaintiff argues the ALJ "wholly omitted" any specific consistency analysis of Plaintiff's testimony regarding her mental

11

impairments. ECF No. 14 at 9. However, the ALJ highlighted Plaintiff's own function report in making her findings regarding mental impairments at step two, and she found that Plaintiff's testimony was not entirely consistent with the medical evidence and other evidence in the record. R. 20-21, 23. The ALJ plainly evaluated the consistency of Plaintiff's allegations of mental health impairments with her mental health records and her mother's third-party report, and she concluded that Plaintiff "should be able to perform the below work with the [RFC] I have given." R. 21. Plaintiff fails to point to any evidence to support her subjective claims, and it is Plaintiff's burden to provide evidence in support of the RFC. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence [the ALJ] will use to make a finding about your [RFC]"). In addition, the ALJ was permitted to rely more generally on Plaintiff's testimony that she had received unemployment benefits after her alleged onset date, as a reason weighing against her claim of having disabling impairments. *See Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) (finding an "obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits").

Plaintiff's own statements in her function report do not support greater limitations than the ALJ found. *See* R. 275-282 (Plaintiff reported daily activities of reading, "walking around property," cooking simple meals, cleaning, visiting, database construction, and doing some chores). As explained above in Part IV.A, the ALJ's failure to discuss Plaintiff's testimony regarding her panic attacks, anxiety, and social issues does not render the consistency analysis fatally deficient. As the ALJ explained, Plaintiff's mental health records from the relevant period repeatedly show only mild mental health symptoms, with Plaintiff's mental health impairments being well-controlled on medications. R. 21-22. The ALJ is permitted to make reasonable

inferences in analyzing the evidence. *See Tillery v. Schweiker*, 713 F.2d 601, 603 (10th Cir. 1983) (where evidence permits varying inferences, court should not disturb ALJ's findings).

The ALJ's discussion satisfies SSR 16-3p. The ALJ was entitled to compare Plaintiff's allegations to the objective findings and her activities of daily living as part of the consistency analysis. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4) (ALJ must consider factors including daily activities, in determining whether conflicts exist between claimant's statements and other evidence).

### V.     Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 31st day of March, 2021.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**